UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60621-STRAUSS

MARY ROBERTS,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment/Initial Brief ("Plaintiff's Motion") [DE 6] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 11]. I have reviewed both motions, Plaintiff's Reply Brief [DE 13], the administrative record [DE 4], and all other filings in this case. For the reasons discussed herein, Plaintiff's Motion [DE 6] is **DENIED** and Defendant's Motion [DE 11] is **GRANTED**.

## I.      BACKGROUND & PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits ("DIB") on December 8, 2020, alleging a disability onset date of July 1, 2020 ("Alleged Onset Date"). Tr. 15, 120–22. Plaintiff was born in 1961 and was 58 years old on the Alleged Onset Date. Tr. 120. Her DIB claim was denied initially and upon reconsideration. Tr. 15, 66–69, 73–76. Thereafter, Plaintiff requested a hearing pursuant to 20 C.F.R. § 404.929 which occurred on July 14, 2022, before an Administrative Law Judge ("ALJ"). Tr. 28–50. Plaintiff appeared telephonically and was not represented. Tr. 30. At the hearing, only Plaintiff and a vocational expert ("VE") provided testimony. Tr. 33, 43. The

ALJ issued her decision on August 24, 2022, finding Plaintiff not disabled under the Social Security Act from the Alleged Onset Date through the date of the ALJ's decision. Tr. 12–27. On January 26, 2023, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's conclusion as the final decision of the Commissioner. Tr. 1–6. Plaintiff subsequently filed this action seeking judicial review of the Commissioner's verdict. [DE 1].

## II.     STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (second alteration in original) (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.   DISCUSSION

### A.  THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history."  *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262–63 (11th Cir. 2008) (quoting *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See* 20 C.F.R. § 404.1520(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  If so, the ALJ will

find the claimant disabled without considering age, education, and work experience.  20 C.F.R. § 404.1520(d).  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale*, 831 F.2d at 1011).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2.  The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 404.1569.  The guidelines

are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience.  *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule."  20 C.F.R. § 404.1569.  Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."  *Phillips*, 357 F.3d at 1242 (alterations in original) (citation omitted); *see also Walker*, 826 F.2d at 1002–03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991).  Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC.  *Hargis*, 945 F.2d at 1490.  However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate.  *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003).  A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing.  *Id.* (citing *Walker*, 889 F.2d at 50).

**B.  ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION**

After considering the evidence, the ALJ found Plaintiff not disabled between the Alleged Onset Date and the date of the ALJ's decision.  *See* Tr. 12–27.  Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation.  Tr. 15–17. Then, addressing the first step in the sequential evaluation, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date.  Tr. 17.

At step two, the ALJ found Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine.  Tr. 18.  The ALJ also discussed Plaintiff's non-severe impairments at step two which included: an altered mental status due to narcotic overuse before the Alleged Onset Date; sciatica on an ER visit prior to the alleged onset date; lumbar spine radiculopathy; spurring of the greater trochanters of both hips, without other abnormalities noted on x-rays; benign arrhythmia with negative workup; psoriasis; nicotine dependence; and decreased visual acuity at 20/25 in the left and 20/40 in the right without corrective lenses.  Tr. 18.  The ALJ concluded that these impairments did not significantly limit Plaintiff's physical or mental ability to do basic work activities.  Tr. 18.

Next, at step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 18.

While conducting step four of the analysis, the ALJ assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC to perform "light work as defined in 20 CFR 404.1567(b) except: no climbing ladders, ropes, and scaffolds; occasional climbing of ramps and stairs and stooping; frequent balancing, kneeling, crouching, and crawling." Tr. 19.  After assessing Plaintiff's RFC, the ALJ found Plaintiff could perform her past relevant work as an administrative clerk and secretary.  Tr. 23.  Thus, the ALJ concluded Plaintiff was not disabled and did not proceed to step five.  Tr.  23.

## C. ANALYSIS

In her motion, Plaintiff raises three arguments.  First, Plaintiff contends the ALJ erred in evaluating the severity of Plaintiff's back symptoms.  Second, Plaintiff argues the ALJ erred when she classified Plaintiff's psoriasis as non-severe.  Finally, Plaintiff posits the ALJ erred in finding

Plaintiff's part-time work was inconsistent with a claim for disability. For the following reasons, the evidence does not support Plaintiff's contentions.

### 1. Severity of Plaintiff's Symptoms

Plaintiff fails to establish error in the ALJ's decision that Plaintiff's symptoms were inconsistent with the evidence in the record. In coming to her conclusion, the ALJ considered numerous pieces of evidence. First, the ALJ considered Plaintiff's testimony. Plaintiff admitted she has a part-time job that she can do fully remotely from home, and a typical day for her consists of doing things around the home such as the laundry, dishes, and generally straightening up. Tr. 19, 39. Plaintiff further testified that she drives herself to the grocery store but is careful not to purchase or lift anything heavy. She stated she prepares meals for herself, but if she cooked, would lean against the counter to help alleviate the back pain. Tr. 19, 39–41. She was unable to sit and watch a movie for more than half an hour, at which time, she had to get up. Plaintiff averred she was "not a big medication taker," and did not follow through with her doctor's recommendation of certain steroid injections because of the reaction she perceived they would cause. Tr. 19, 40.

Next, the ALJ reviewed Plaintiff's medical evidence. That evidence revealed the emergency department at Memorial Hospital admitted Plaintiff for lower back pain in December 2019. Tr. 252. The hospital provided Plaintiff with one tablet of NORCO and one tablet of NORFLEX, and prescribed NORCO, LIORESAL, and DELTASONE on discharge for left-sided sciatic pain. Tr. 254–56. Plaintiff returned to Memorial Hospital's emergency department around a month later due to being in an altered mental state. Tr. 232. The treating physician diagnosed Plaintiff with an altered mental state which was secondary to the use of narcotics and possibly with psychosis associated to steroids. Tr. 245–46. Notably, while in the emergency room for her altered mental state, Plaintiff's records indicate the hospital provided Plaintiff with steroids, which helped

her, but withheld narcotics.  Tr. 245.  Additionally, Plaintiff's physical exam and CT exam discovered nothing out of the ordinary.  Tr. 244–45.

The ALJ noted that the emergency room visits were months prior to Plaintiff's Alleged Onset Date.  Tr. 20.  Since her Alleged Onset Date, Plaintiff has not returned to the emergency room for back pain or had any chiropractic treatment.  Tr. 20, 166, 175.  Plaintiff underwent an MRI which revealed multi-level disc bulges, again, prior to Plaintiff's Alleged Onset Date.  Tr. 337.  In 2021, Plaintiff visited Dr. Christopher Foth, a consultive examiner, who performed her physical.  Tr. 366–69.  Dr. Foth assessed Plaintiff suffered from psoriasis and sciatic nerve pain and anticipated Plaintiff would have difficulties performing work-related activities such as sitting, standing, walking, lifting, carrying, and handling objects.  Tr. 368–69.  Notably, Dr. Foth's exam found "[n]o significant range of motion deficits at the cervical or lumbar spine," no "paravertebral muscle spasm," "[n]o significant range of motion deficits at bilateral upper extremities or lower extremities," and Plaintiff's "[s]itting and supine straight leg raises [were] negative bilaterally." Tr. 368.

Plaintiff underwent another orthopedic evaluation in 2022 with Dr. Richard Linn.  Tr. 392–94.  Dr. Linn concluded Plaintiff had normal alignment of the lumber spine, moderate restriction of motion with associated discomfort, and moderate lumbar muscular spasm with associated tenderness.  Tr. 393.  As was the case in 2021, straight leg raise testing was negative bilaterally. Tr. 393.  For treatment, Dr. Linn recommended Plaintiff use Medrol Dosepak to reduce the inflammation or consider taking a lumbar epidural steroid injection.  Tr. 394.  Plaintiff refused both recommendations.  Tr. 41–42.

Last, the ALJ reviewed the state agency medical consultants and prior administrative medical findings.  Tr. 22.  The ALJ noted that the medical consultants opined that Plaintiff could

perform medium-level work with unlimited ability to perform postural activities except occasionally climb ladders, ropes, scaffolds, and frequently stoop.  Tr. 22, 54–55, 58–63, 389.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."  42 U.S.C. § 423(d)(5)(A); *see also* 20 C.F.R. § 404.1529(a).  Instead, the ALJ must examine all the evidence – especially the objective medical evidence – when determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1529(a).  A claimant seeking to establish a disability based on testimony of pain and other symptoms must satisfy two parts of a three-part test showing "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225.  If the medical evidence shows a claimant has a medically determinable impairment that "could reasonably be expected to produce [a claimant's] symptoms, such as pain," then the ALJ must evaluate the intensity and persistence of a claimant's symptoms to determine how those symptoms affect a claimant's capacity for work.  20 C.F.R. § 404.1529(c)(1).

Here, Plaintiff testified she could not sit for more than half an hour before needing to get up due to her back pain, and, when she worked full time, Plaintiff had difficulty preparing meals and cooking because of the pain which required her to lean against the counter as standing straight up was too painful.  Tr. 40–41.  In contrast with these statements, Plaintiff's medical records indicate she suffered from sciatic nerve pain – which Dr. Foth opined would lead to difficulties performing work-related activities – but otherwise had "[n]o significant range of motion deficits at the cervical or lumbar spine," no "paravertebral muscle spasm," and "[n]o significant range of motion deficits at bilateral upper extremities or lower extremities."  Tr. 368–69.  Additionally, Plaintiff's most recent orthopedic evaluation reveled she had normal alignment of the lumber

spine, moderate restriction of motion with associated discomfort, and moderate lumbar muscular spasm with associated tenderness.  Considering this evidence, the ALJ concluded Plaintiff showed evidence of an underlying medical condition and the medical condition could have reasonably been expected to give rise to the claimed pain.  Tr. 20.

The ALJ then evaluated the intensity and persistence of Plaintiff's symptoms to determine how those symptoms affected Plaintiff's capacity for work.  An ALJ should not reject a claimant's statements about "the intensity and persistence of [their] pain or other symptoms or about the effect [their] symptoms have on [their] ability to work solely because the available objective medical evidence does not substantiate [their] statements."  20 C.F.R. § 404.1529(c)(2).  Nevertheless, an ALJ should consider the objective medical evidence, as well as other evidence such as (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of a claimant's pain or other symptoms, (3) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate their pain or other symptoms, (4) treatment they received or have received for pain relief, (5) and any measures they have used to relieve their pain or other symptoms.  20 C.F.R. § 404.1529(c)(2)–(3).

In finding that the Plaintiff's complaints about her subjective pain symptoms were overstated, the ALJ pointed to several pieces of evidence.  The ALJ noted Plaintiff's testimony that she could still perform daily activities around the home such as the laundry, dishes, and generally straightening up.[1]  Tr. 39.  Plaintiff could also drive herself to the grocery store and go

---

[1] This Court is cognizant of the fact that mere participation in everyday activities of short duration is not dispositive of whether a claimant is disabled.  *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [claimant's] treating physicians.").  The ALJ, however, considered several other factors in coming to her conclusion.

shopping but was careful not to lift anything heavy.  Tr. 39–40.  Plaintiff stated her pain was along her back, would act up after thirty minutes of sitting straight, and last until she changed positions or did her recommended exercises.  Tr. 41–43.  Yet, Plaintiff suggested she could work full-time if the job was remote.  Tr. 36–37.

The ALJ also found the fact that Plaintiff had not sought any treatment for her back pain since the Alleged Onset Date (with her visits to the emergency room pre-dating the Alleged Onset Date), as well the fact that Dr. Finn's notes recommended only conservative treatment, to be inconsistent with Plaintiff's subjective pain symptoms.  Tr. 21-22.  The ALJ similarly considered the fact that Plaintiff has declined to take medication as inconsistent with her subjective symptoms.  In terms of the type, effectiveness, and side effects of the medication Plaintiff takes or has taken, Plaintiff declared she was "not a big medication taker."  Tr. 40.  Plaintiff's physician recommended she use Medrol Dosepak to reduce the inflammation or consider taking a lumbar epidural steroid injection receive.  Tr. 394.  However, Plaintiff stated that was not an option due to her belief that steroids caused her to experience a severe reaction in 2020.  Tr. 41–42.  All of these facts amount to substantial evidence supporting the ALJ's findings.

Plaintiff finds error with the ALJ's interpretation of Plaintiff's refusal to receive steroid injections, contending that the ALJ did not account for Plaintiff's fear of suffering an adverse reaction like the one that sent her to the emergency room in January 2020.  Specifically, Plaintiff argues that the ALJ improperly substituted her opinion for that of the medical professionals in stating that NORCO (the narcotic) had been the medication that had caused Plaintiff's altered mental status and not steroids.  [DE 6 at 10]; Tr. 20.  The ALJ, however, did not formulate this statement solely on her own suspicion and did not simply substitute her opinion for that of a medical professional.  On the contrary, the objective medical evidence suggested Plaintiff's altered

mental state was secondary to the use of narcotics and possibly with psychosis associated to steroids. Tr. 245–46. Moreover, while in the emergency room for her altered mental state, Plaintiff's records indicate the hospital provided Plaintiff with steroids, which helped her, but withheld narcotics. Tr. 245.

While it is true different physicians at different times during Plaintiff's stay in the emergency room for altered mental state were unsure of the cause of her health troubles,[2] "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). In this scenario, Plaintiff has not shown there was an absence of substantial evidence supporting the ALJ's conclusion that narcotics, rather than steroids, caused Plaintiff's altered mental state.

Plaintiff further alleges the ALJ incorrectly dismissed the severity of Plaintiff's 2020 MRI report, and Dr. Foth's opinion relying on that MRI, and relied too heavily on her lumbar x-rays taken in 2022. [DE 6 at 11]. But the ALJ's conclusions are supported by substantial evidence. Because Plaintiff filed her claim after March 27, 2017, the ALJ must consider but does "not defer or give any specific evidentiary weight, including controlling weight," to any medical opinions. 20 C.F.R. § 404.1520c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting the requirement to assign weight to medical opinions has been omitted from the revised regulation). Instead, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-

---

[2] *Compare* Tr. 239, 245, *with* Tr. 245–47.

12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)-(5)).  Supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(a).  Although an ALJ no longer needs to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. § 404.1527 – the ALJ must still articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be.  20 C.F.R. § 404.1520c(b).

The ALJ must explain how they considered the factors of supportability and consistency, but the ALJ is generally not required to explain how they considered the other three factors.  20 C.F.R. § 404.1520c(b)(2)-(3).  Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the medical evidence presented to the ALJ contained reports on Plaintiff's back pain from several doctors over the span of two years.  Two of those doctors diagnosed Plaintiff with sciatica.  *See* Tr. 368, 393–94.  The ALJ reasonably found Dr. Foth's opinion unpersuasive because "it was overly broad and vague" and inconsistent with his own physical exam findings of Plaintiff.  Tr. 22.  Further, the ALJ observed that Dr. Finn only recommended "conservative treatment measures" which further buttressed the ALJ's conclusion regarding Dr. Foth's opinion.  Tr. 21.  Even the State agency medical consultants posited Plaintiff could perform medium-level work and

should not be classified as disabled.  Tr. 54–55, 58–63, 389.  While discussing Plaintiff's RFC, the ALJ later rejected the State agency medical consultants' finding that Plaintiff could perform medium work and held the evidence presented shows Plaintiff's impairments permit her to perform light-level work.  Tr. 22.  The ALJ explained she found the consultants' reports only partially persuasive and that the disagreement in work level stemmed from additional evidence presented to her that was not available at the time the consultants performed their evaluation.  Tr. 22.  This further illustrates that the ALJ properly evaluated the persuasiveness of the medical opinions and described the supportability and consistency of each piece of evidence.  Accordingly, the ALJ did not err in evaluating the severity of Plaintiff's back symptoms.

Lastly, Plaintiff argues that the ALJ erred by relying heavily on Plaintiff's failure to seek medical treatment as a reason to discount her subjective complaints without considering whether Plaintiff could afford treatment.  [DE 6 at 10, DE 13 at 2–3].  In essence, Plaintiff suggests the ALJ improperly considered Plaintiff's lack of seeking medical treatment and Plaintiff's rejection of certain kinds of treatment (i.e., the steroids) without properly contemplating whether Plaintiff forwent treatment, and rejected the recommended steroid treatment, because she lost her health insurance and her perceived negative reaction to steroids.

A claimant's refusal to "to follow prescribed medical treatment without a good reason will preclude a finding of disability."  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988); 20 C.F.R. § 404.1530.  But, "poverty excuses noncompliance," and "when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment."  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins*, 848 F.2d at 1213).

14

In this instance, Plaintiff stated she did not see any additional doctors because she lost her health insurance.  *See* Tr. 175.  Although the ALJ mentions that Plaintiff "has not returned to the ER for complaints of back pain," and has "not had any chiropractic treatment since March 2020," the ALJ did not deny Plaintiff's claim solely for these reasons.  *See* Tr. 20.  The ALJ relied on the objective medical evidence and reports from several medical professionals in arriving at her decision.  Specifically, the ALJ considered Plaintiff's testimony where she stated she can perform typical activities and maintain her part-time job, and the ALJ reviewed Dr. Finn's recommendation that Plaintiff only undergo conservative treatment.  Tr. 19, 21, 39–41.  Therefore, any error in not adequately addressing Plaintiff's lack of insurance and apprehension to taking steroids as part of her treatment was harmless as the ALJ did not exclusively rely on these factors.  *See Ellison*, 355 F.3d at 1275–76; *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 658 (11th Cir. 2020).

### 2.   Plaintiff's Psoriasis

Plaintiff next contends the ALJ failed to develop the record regarding Plaintiff's psoriasis, and improperly classified the impairment as non-severe.  [DE 6 at 12–13].  As a threshold matter, Plaintiff cannot establish error at step two because the ALJ already found Plaintiff's back symptoms severe and proceeded with the next steps in the analysis.  *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[T]here is no need for an ALJ to identify every severe impairment at step two.").

As to developing the record, the ALJ satisfied her obligation.  It is appropriate for an ALJ to rely on a claimant, whether represented by an attorney or not, to initially obtain updated medical

evidence.  *See Ellison*, 355 F.3d at 1276.  All of Plaintiff's most recent medical records were compiled and admitted as evidence.  Additionally, the ALJ ensured Plaintiff's records were up to date by asking her during the hearing if she has gone to any other medical provider or if there is anything that might be missing.  *See* Tr. 42–43.  Plaintiff responded in the negative.  Tr.  42–43.

Plaintiff states the ALJ did not mention the symptoms and limiting effects of Plaintiff's psoriasis during the hearing, [DE 6 at 12], thereby not fulfilling the ALJ's "special duty" to develop a full and fair record for an unrepresented claimant.  *See* [DE 13 at 5–6].  That "special duty" is not applicable in this scenario.  Only when "the right to representation has not been waived," does the ALG's obligation "to develop a full and fair record rise[] to a special duty."  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Plaintiff waived her right to representation and does not challenge that waiver.  Tr. 30–32.  Therefore, Plaintiff "must show 'clear prejudice or unfairness' caused by lack of counsel in order to prove that [s]he was denied a full and fair hearing and is entitled to a remand to the Secretary."  *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985) (quoting *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981)).

The ALJ, however, provided Plaintiff with multiple opportunities throughout the hearing to address the very issue she now raises.  For example, the ALJ questioned Plaintiff on her previous jobs and her current job as well as whether Plaintiff could work full-time if given the opportunity. Tr. 36–39.  Plaintiff responded that she could work full-time either at her old job – if they hired her back – or full-time at her current job if that became an option. Tr. 36–39.  After those questions, the ALJ asked Plaintiff if there was anything else she would "like to tell [the ALJ] about any of [her] impairments" before the ALJ began questioning the VE.  Tr. 41.  Plaintiff, in turn, stated she would love to work but that she cannot because she is unable to sit for more than thirty minutes, and then continued to highlight the treatment she sought for her back pain.  Tr. 41–42.  At no point

in the hearing did Plaintiff discuss any difficulty working due to her psoriasis despite numerous opportunities to do so.  In fact, after the hearing, Plaintiff submitted a letter to the ALJ claiming her argument was incomplete in that she did not properly explain why it was so hard for her to continue working with her back pain.  Tr. 204–05.  As with the hearing, Plaintiff failed to mention or address her psoriasis.

"The ALJ must consider all of the impairment evidence presented at the hearing, stating the weight accorded to each item and the reasons for accepting or rejecting the evidence." *Norton v. Comm'r of Soc. Sec.*, 607 F. App'x 913, 915 (11th Cir. 2015).  Despite not raising the alleged difficulties she faces due to her psoriasis at the hearing, or subsequent letter to the ALJ, Plaintiff argues she addressed it in her application.  [DE 6 at 12].  This is evidenced in Plaintiff's disability report appeal and her subsequent evidence submission prior to the hearing.  Tr. 169–75, 396–415.  Plaintiff mentioned her psoriasis impairment prevented her from wearing dresses or jeans, and instead, she needed to wear yoga pants which her previous job allowed.  Tr. 173.  Plaintiff also attested that the antihistamine prescribed to her to help with her itching caused her to wake up groggy in the morning.  Tr. 173.  Nonetheless, the objective medical evidence does not support Plaintiff's alleged symptoms.

In Plaintiff's Motion and Reply, Plaintiff asserts her psoriasis – along with the medication to treat it – diminishes her concentration, makes her sleepy, and is only "somewhat improved" with the use of the prescribed cream.  [DE 6 at 12–13, DE 13 at 5].  The urgent care medical report tells a different story.  In the "history of present illness" section, there are notes saying the problem (psoriasis) is improving and had actually improved by 50% until Plaintiff's medication ran out. Tr. 397.  A review of the systems also showed Plaintiff had no fatigue, fever, pain, sore throat, headache, or joint symptoms.  Tr. 397.  In the assessment plan section, the treating physician

diagnosed Plaintiff with psoriasis, instructed her to use ointment as prescribed, and to follow up with a primary care provider or dermatologist for any uncontrolled or ongoing treatment.  Tr. 398.

Plaintiff's other medical reports – Dr. Foth's disability examination, June 2021 emergency room report, January 2020 emergency room report, and December 2019 emergency room report– are likewise contrary to Plaintiff's assertions.  Dr. Foth's report diagnosed Plaintiff with psoriasis (along with sciatic nerve pain and arrhythmia), but Plaintiff's only symptom was "back pain."  Tr. 367.  There was no finding of sleep abnormalities, fatigue, or any psychiatric symptoms.  Tr. 367.  On Plaintiff's June 3, 2021 emergency room report, Plaintiff disclosed she had a prior psoriasis diagnosis but the treating physician noted there were no rashes or wounds on Plaintiff during her visit.  Tr. 343.  When Plaintiff went to the emergency room in January 2020, there was no psoriasis diagnosis.  Tr. 235–54.  Finally, Plaintiff's December 2019 emergency room report disclosed she had a past psoriasis diagnosis, but she was negative for rash on her skin and her complaint was solely focused on her back pain.  Tr. 224–30.

Aside from Plaintiff's conclusive statements in her application, none of the objective medical evidence indicates Plaintiff suffers from lack of concentration or excess fatigue due to her psoriasis and her medication treating it.  An ALJ may discredit a claimant's subjective testimony so long as they "articulate explicit and adequate reasons for doing so."  *Garcia v. Comm'r of Soc. Sec.*, 833 F. App'x 303, 308 (11th Cir. 2020) (quoting *Wilson*, 284 F.3d at 1225).  "Where a claimant's treatment history is inconsistent with her subjective complaints or she fails to follow prescribed treatment that might alleviate her symptoms, the ALJ may find that her subjective testimony is inconsistent with the overall evidence in the record."  *Douglas*, 832 F. App'x at 657.

Here, Plaintiff's medical reports mostly omit any reference to her psoriasis save for the reports listing it as either a prior diagnosis or commenting on its appearance on Plaintiff.  *See* Tr.

205–22, 224–30, 234–56.   The consultive examiner's (Dr. Foth) report stated Plaintiff had significant psoriasis.  Tr. 366.  Notably, the report focused overwhelmingly on Plaintiff's back pain, only said Plaintiff had systems of back pain, and, as the ALJ observed, vaguely stated "claimant will have difficulties performing work-related activities."  Tr. 367–68.  The only other report specifically tailored to Plaintiff's psoriasis was from the emergency room visit in April 2022, but the treating physician noted Plaintiff was not suffering from fatigue or psychiatric symptoms and merely prescribed Plaintiff ointment to help with the rash which Plaintiff admitted was more than half-way improved until she ran out of it.  Tr. 397–98.

The ALJ articulated the reasons why she rejected Plaintiff's subjective testimony regarding her psoriasis.  The ALJ specified that Dr. Foth's report was not persuasive because it was "overly broad and vague, somewhat speculative . . .[,] and not phrased in policy compliant language."  Tr. 22.  Furthermore, the ALJ discussed the relevant medical opinions and evidence (which, noted above, largely omitted Plaintiff's psoriasis) in detail and explained their persuasiveness.  Because Plaintiff failed to discuss her psoriasis impairment during the hearing (even when given the opportunity to do so) or within the subsequent letter, the ALJ articulated why she rejected Plaintiff's subjective testimony about her psoriasis, and there is substantial evidence in the record supporting the ALJ's position, this Court imputes no error in the ALJ's decision.

### 3.  Plaintiff's Part-Time Work

Plaintiff's final argument pertains to the ALJ's characterization of Plaintiff's part-time work.  Plaintiff argues, without citing anything explicit in the record, that the ALJ's decision "relied strongly on her evaluation of Plaintiff's 'own statements regarding the ability to do full-time work if given her old job back and if her current part-time work (since December 2021) changed to full-time work.'"  [DE 6 at 13].  After reading the ALJ's decision, there is no indication

that she relied "strongly" on Plaintiff's own testimony about her ability to continue working at her part-time job.

In prescient fashion, 20 C.F.R. § 404.1571 specifically states "[e]ven if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." Thus, the Code permitted the ALJ to consider Plaintiff's testimony about her current part-time job and compare it with her claim of disability.

Plaintiff further contends the ALJ did not ask the VE whether there was a full-time job available in the national economy similar to the part-time work that Plaintiff was performing. [DE 6 at 13–14]. In support of this contention, Plaintiff points to her testimony that "she did not believe a similar position existed as a full-time job." [DE 6 at 14]. Plaintiff's subjective belief that no job exists in the national economy is unpersuasive. The VE testified Plaintiff, while only performing light exertion, could return to her past job as an administrative clerk or return to the sedentary work of a sales secretary. Tr. 44. Plaintiff herself testified she could return to her past job or continue with her current part-time job if a position became available. Tr. 36–39.

Contrary to Plaintiff's claim that the ALJ conjured up an imaginary job when determining Plaintiff was able to engage in full-time work, there is substantial evidence in the record establishing suitable jobs are available in the national economy. In Plaintiff's supplemental letter, she admits being able to work from home and using her short "several minute[]" breaks to lie flat down on her bed made the difference. Tr. 204–05. During the VE's testimony, he explained that individuals in sedentary and light work jobs could "alternate positions between sitting and standing generally at their discretion without a loss of production." Tr. 48. Therefore, Plaintiff can continue to work from home, taking those several-minute breaks to lie down, without compromising her ability to maintain productivity. Simply because her old company has not offered her job back –

which Plaintiff testifies is due to a slowdown in orders – does not undermine the evidence regarding the number of remote sedentary or light exertion jobs in the national economy.  After weighing the evidence before her, the ALJ found Plaintiff was able to obtain work in the national economy.  Tr. 23.  As a result, this Court finds no error in the ALJ's decision.

## IV.   <u>CONCLUSION</u>

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 6] is **DENIED** and Defendant's Motion [DE 11] is **GRANTED**.  The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 14th day of December 2023.

Jared M. Strauss
United States Magistrate Judge